**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CHANEYS INDIAN ART, INC. d/b/a
TURQUOISE DIRECT,

Plaintiff,

v. No.

ROLAND GLASSCOCK and
TURQUOISE TRADERS DIRECT LLC.

Defendants.

# COMPLAINT FOR INJUNCTION AND DAMAGES

Plaintiff Chaneys Indian Art, Inc. (Chaneys) dba TURQUOISE DIRECT® alleges as follows for its complaint against defendants Roland Glasscock and Turquoise Traders Direct LLC:

## INTRODUCTION

1. This action arises from defendants' unauthorized commercial use of plaintiff's trademark TURQUOISE DIRECT®.

2. Plaintiff is a third-generation New Mexico family business that deals exclusively in handmade Native American jewelry. Nearly twenty years ago the company's predecessor rebranded under the name TURQUOISE DIRECT®. Plaintiff has continuously used that trademark since in connection with its business, including in digital and print advertising and promotional materials. Through this longstanding and consistent use, the mark has acquired secondary meaning. Today consumers and industry publications alike recognize TURQUOISE DIRECT® as referring to the plaintiff.

3. Plaintiff spent nineteen years developing the TURQUOISE DIRECT® brand, cultivating a reputation for authenticity, reliability, and exceptional customer service. It has become a trusted source of authentic Native jewelry not only in New Mexico, but around the country. It is well known to customers and in the trade because of its consistent marketing via online retail platforms and social media, and attendance at regional trade and gem shows in Santa Fe, New Mexico and Tucson, Arizona—where defendants are based.

4. Plaintiff applied to register TURQUOISE DIRECT® in 2023 (U.S. Supp. Reg. No. 7,942,431). Plaintiff was without counsel at the time and it decided to register the mark on the Supplemental Register even though TURQUOISE DIRECT® had acquired distinctiveness. Although the mark is on the Supplemental Register, plaintiff has common law trademark rights in TURQUOISE DIRECT® and priority over the mark dating back nearly twenty years.

5. Defendant Glasscock and his business, defendant Turquoise Traders Direct LLC, started infringing plaintiff's trademark in or around 2022 when they launched TURQUOISE TRADERS DIRECT—a competing online retail platform that sells to customers around the country. Defendants market their products as "handmade" jewelry by "the best Native American and Southwestern artists in the county." *See* Turquoise Traders Direct, Home, turquoisetradersdirect.com (last visited Nov. 5, 2026). Defendants' competing business intentionally markets the same style of jewelry as plaintiff despite a portion of their inventory coming from non-native artists, and sells their pieces via the same online retail platforms to the same customer base as plaintiff, all while passing off their products under the name TURQUOISE TRADERS DIRECT.

6. Defendants' unauthorized use of TURQUOISE TRADERS DIRECT threatens the reputation plaintiff has cultivated as a trusted source of authentic, handmade, Native American

jewelry. Defendants are confusing and diverting plaintiff's clientele, and overwhelming the market with competing pieces, thereby reducing the viability of TURQUOISE DIRECT® as a unique source identifier for plaintiff. By adopting the mark, rather than developing their own name and brand, defendants are misleading consumers in violation of plaintiff's common law trademark rights.

7. On August 5, 2026 and again on September 9, 2026 plaintiff's counsel wrote to defendants to request that they cease using the TURQUOISE DIRECT® mark. Defendants responded by changing their name to "Turquoise Traders Direct LLC" on various social media accounts. Plaintiffs informed them that their minimal change was insufficient but defendants stopped responding and are continuing to willfully infringe plaintiff's trademark.

## PARTIES, VENUE, AND JURISDICTION

8. Chaneys Indian Art, Inc. is a New Mexico corporation incorporated in 2008.

9. Upon information and belief, defendant Turquoise Traders Direct LLC is an Arizona limited liability company, organized in 2022, and transacting business in New Mexico.

10. Upon information and belief, defendant Roland Glasscock is a resident of Arizona who owns and is an agent of Turquoise Traders Direct LLC.

11. Upon information and belief, Turquoise Traders Direct LLC and Mr. Glasscock acquire a substantial portion of their TURQUOISE TRADERS DIRECT jewelry from New Mexico suppliers, come to New Mexico to market their jewelry under their infringing trademark, and operate an interactive website through which they market and sell competing goods under the infringing trademark to consumers in New Mexico and throughout the world.

12. This Court has personal jurisdiction over defendants and venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, defendants source inventory

from this District, market their jewelry from this District and to people in this District using the TURQUOISE TRADERS DIRECT mark, thus a significant part of the events giving rise to plaintiff's claims occurred in this District.

13. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 because this action arises under the trademark laws of the United States 15 U.S.C. §§ 1051 et seq.

## GENERAL ALLEGATIONS

TURQUOISE DIRECT® Acquires Distinctiveness Over Nineteen Years of Widespread Use, Advertising, and Third-Party Recognition

14. Plaintiff's predecessor started using TURQUOISE DIRECT® in January 2007 to market and sell handmade jewelry. Since then, the mark has acquired secondary meaning.

15. Plaintiff has continuously used TURQUOISE DIRECT® to identify the source of its jewelry. The following is an example of its digital advertisements over the years:



16. Plaintiff has also used TURQUOISE DIRECT® on printed material including business cards, invoices, sales receipts, and certificates of authenticity:








Turquoise Direct

CERTIFICATE OF AUTHENTICITY

Name of Artist Herman Smith

Tribal Affiliation Navajo

Description Sterling silver hand rolled and hammered ingot bracelet set with high grade natural Arizona Turquoise Mountain Spiderweb turquoise.

Date of Purchase 9/8/12

Purchased [redacted]

Retail value as of date of purcha[redacted]

Turquoise Direct guarantees that all turquoise and coral purchased is natural. All silver is sterling (92.5%) and all gold is a minimum of 14 carat.

Turquoise Direct guarantees that jewelry sold is handmade by a Native American artist.

For Turquoise Direct

17. Plaintiff uses the mark on packaging for its jewelry as follows:







18. For nineteen years, plaintiff has continuously advertised its jewelry in connection with its trademark in major magazines including *Cowboys & Indians* and *Native American Art*

*Magazine*, and at some of the largest Native American jewelry and gem shows in the United States, such as Santa Fe's Indian Market and Tucson's JOGS gem show.

19. Since 2007, plaintiff has spent approximately $150,000 on its advertising campaigns. During the same period, it has sold its jewelry to thousands of customers from around the country and generated millions in revenue, all while using TURQUOISE DIRECT® to identify the source of its goods.

20. Industry publications recognize TURQUOISE DIRECT® and use the mark to refer to plaintiff. Publishers like *American Indian Jewelry* use the mark to identify the source of plaintiff's jewelry. *See* 8 Dr. Gregory Schaaf, *American Indian Jewelry II: A to L (1,800 Artist Biographies)*, 2012, at 36, 179, 237, 267.

21. Third party recognition of plaintiff's trademark is also apparent from actual customers who associate TURQUOISE DIRECT® with plaintiff. In recent years, a number of confused customers have placed calls to plaintiff after confusing it with defendants' TURQUOISE TRADERS DIRECT.

<u>Plaintiff Registers TURQUOISE DIRECT® on the Supplemental Register</u>

22. In addition to common law rights that it obtained from decades of continuous and exclusive use of TURQUOISE DIRECT®, plaintiff has a federal registration for the mark— U.S. Reg. No. 7,942,431.

23. During the application process, the trademark examiner asked plaintiff to provide "additional evidence of acquired distinctiveness, such as verified statements of long-term use, advertising and sales expenditures, examples of advertising, affidavits and declarations of consumers, and customer surveys. See 37 C.F.R. §2.41(a)(3); TMEP §§1212.02(g), 1212.06 et seq."

24. Despite having the foregoing evidence of acquired distinctiveness, plaintiff was without the assistance of counsel and was unsure of how to navigate the request. As a result, plaintiff opted to register the mark on the supplemental register. However, plaintiff conveyed this evidence when communicating with defendants about their infringement.

Defendants' Intentionally Copy the Turquoise Direct Mark,
Demonstrating Their Recognition of its Value and Distinctiveness

25. Plaintiff first encountered defendant Glasscock at the annual Tucson JOGS gem show prior to the COVID-19 pandemic. There Mr. Glasscock was able to view the TURQUOISE DIRECT® business and inventory, interact with plaintiff's employees, and observe a number of its sales. Defendants could also view plaintiff's online retail platform at the time.

26. Mr. Glasscock's decision to later copy both plaintiff's trademark and online business model reflects his understanding that TURQUOISE DIRECT® was a valuable mark associated with Native American jewelry before he began using it.

27. In June of 2022, defendants started using TURQUOISE TRADERS DIRECT, a close variant of plaintiff's trademark, in connection with the same style of jewelry as plaintiff. Defendants use the mark on their website and smartphone application, as well as on a number of digital media platforms like Facebook, Instagram, TikTok, and Etsy.

28. Defendants copied other aspects of plaintiff's business. For example, defendants' website URL is turquoisetradersdirect.com compared to plaintiff's turquoisedirect.com, and the sites share a similar blue and white color palette. Defendants' site even claims their business is "50 plus years in the making" despite launching in 2022, whereas plaintiff's website prominently advertises that "Turquoise Direct is a family owned business" that has "been in this business for over 54 years." Each of these similarities further blurs the lines between plaintiff and defendants' businesses and contributes to consumer confusion.

Defendants' Business and Trademark Use in New Mexico

29. Defendants use plaintiff's trademark to market their competing business to New Mexicans via an interactive retail website (turquoisetradersdirect.com), a brand-specific retail app, and an Etsy shop webpage, among other platforms. Defendants claim on their website that they "ship worldwide" and state on their Facebook page that "Turquoise Traders Direct LLC provides authentic Native American and Southwest Jewelry Nationwide." *See* FAQs, https://turquoisetradersdirect.com/pages/faq (last visited Nov. 5, 2026); Turquoise Traders Direct LLC, facebook.com/TurquoiseTradersDirect (last visited Nov. 5, 2026).

30. Upon information and belief, Defendants purchase a significant amount of the inventory they market as TURQUOISE TRADERS DIRECT jewelry from artists and dealers in Gallup and Albuquerque, New Mexico.

31. Upon information and belief, Defendants have marketed TURQUOISE TRADERS DIRECT jewelry directly from New Mexico.

Defendants' Use of TURQUOISE TRADERS DIRECT
Causes and Will Continue to Cause Confusion Among Consumers

32. Over the years since defendants started using TURQUOISE TRADERS DIRECT, Chaneys has received dozens of calls from customers mistaking it for defendants or assuming it is connected to defendants. For example, on July 9, 2026, a disgruntled customer called after purchasing a piece of jewelry from defendants that she thought came from TURQUOISE DIRECT®.

33. Defendants' addition of "TRADERS" to plaintiff's trademark did not mitigate consumer confusion, and neither will the addition of "LLC." The high degree of similarity between the appearance and sound of the marks, the type of jewelry sold by the parties, and manner of

marketing and sales via online retail platforms makes additional consumer confusion highly likely, if not inevitable.

34. Chaneys has never authorized defendants to use TURQUOISE DIRECT® or consented to defendants' use of confusingly similar variants of the mark.

35. Defendants' use of a close and confusingly similar variation of TURQUOISE DIRECT® is likely to continue causing consumer confusion about the source of sponsorship of the goods defendants provide. After more than two decades of continuous and exclusive use of the mark, consumers are familiar with plaintiff's high-quality jewelry and customer service, as well as their reputation as a supplier of exclusively Native American jewelry. By using TURQUOISE TRADERS DIRECT in the same marketplace and via the same online retail marketing channels, for inventory including non-Native jewelry, defendants will immediately and irreparably harm plaintiff's goodwill and reputation. Defendants' willfully infringing use of the TURQUOISE DIRECT® mark will also weaken the distinctiveness of the mark and harm plaintiff's ability to use TURQUOISE DIRECT® to denote the unique source of its products.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Infringement of a Registered Trademark**

36. Plaintiff incorporates by reference all of the foregoing allegations.

37. TURQUOISE DIRECT®, U.S. Supp. Reg. No. 7,942,431, is a valid and subsisting registered trademark that has acquired distinctiveness and provides plaintiff the exclusive right to use TURQUOISE DIRECT® in commerce in connection with handmade jewelry.

38. Defendants' use of TURQUOISE TRADERS DIRECT for jewelry constitutes willful and knowing infringement of plaintiff's trademark rights in TURQUOISE DIRECT®.

39. Defendants' conduct is likely to cause confusion, mistake, or to deceive the purchasing public and others, leading them to mistakenly believe that the defendants' products are those of the plaintiff.

40. The defendants' conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm, damage, and injury to the plaintiff.

41. Plaintiff has no adequate remedy at law.

42. As a direct and proximate result of defendants' infringement, plaintiffs have and continue to suffer damages in an amount to be proven at trial, along with irreparable harm. Plaintiffs are entitled to all available and applicable remedies including preliminary and permanent injunctive relief, disgorgement of defendants' profits, punitive damages, other damages, costs, and reasonable attorneys' fees.

**COUNT II**
**Infringement of a Common Law Trademark**

43. Plaintiff incorporates by reference all of the foregoing allegations.

44. TURQUOISE DIRECT® has acquired distinctiveness since 2007 as a result of plaintiff's continuous and exclusive use of the mark, extensive advertising campaigns, and significant sales volumes. Consumers and industry publications alike have come to recognize TURQUOISE DIRECT® as denoting a high-quality product and plaintiff as its source.

45. Defendants' use of a close and confusingly similar variation of TURQUOISE DIRECT® causes, and is likely to continue causing consumer confusion as to the source or sponsorship of defendants' products, and infringes plaintiff's exclusive trademark rights in TURQUOISE DIRECT®.

46. Defendants' use of a close and confusingly similar variation of TURQUOISE DIRECT® has caused and continues to cause damages, injury, and immediate and irreparable harm to plaintiff.

47. As a direct and proximate result of defendants' infringement of the TURQUOISE DIRECT ® mark, plaintiff have and will continue to suffer damages in an amount to be determined at trial, and irreparable harm. Plaintiff is entitled to all available and applicable remedies, including preliminary and permanent injunctive relief, disgorgement of defendants' profits, punitive damages, other damages, costs, and reasonable attorneys' fees.

**COUNT III**
**False Designation of Origin and Unfair Competition**

48. Plaintiff incorporates by reference all of the foregoing allegations.

49. Defendants' use of a close and confusingly similar variation of TURQUOISE DIRECT® in connection with jewelry, along with defendants' imitation of plaintiff's business, is likely to cause confusion among relevant consumers and constitutes a false designation of origin or representation that wrongfully leads consumers to believe that defendants' products are those of plaintiff, originate from the same source, and falsely suggests that plaintiff and defendants are associated, affiliated, or connected with each other or that they are sponsoring each other, all of which harms plaintiff.

50. Plaintiff has no control over the quality of the jewelry marketed and sold by TURQUOISE TRADERS DIRECT, including whether or not it is exclusively sourced from Native American artists. Plaintiff also has no control over the quality of defendants' business practices or customer services, all of which are improperly associated with TURQUOISE DIRECT®. Defendants' malicious disregard for plaintiff's rights is harmful to plaintiff and to the consuming public.

51. Upon information and belief, defendants' actions were undertaken willfully and with knowledge of the falsity of the designation of origin, descriptions, and/or representations used in connection with the sale of defendants' jewelry. Defendants willfully and with full knowledge infringe plaintiff's TURQUOISE DIRECT® mark, causing that jewelry to be advertised, offered, and sold in interstate commerce to the immediate and irreparable harm of plaintiff.

52. Upon information and belief, defendants have derived and received, and will continue to derive and receive gains, profits, and advantages from their false designation of origin in an amount that is not presently known to plaintiff.

53. Unless and until preliminarily and permanently enjoined by this Court, the defendants' infringement of TURQUOISE DIRECT® and false designation of origin will continue to the detriment of plaintiff, for which plaintiff has no adequate remedy at law.

54. As a direct and proximate result of defendants' false designation of origin, plaintiff has and will continue to suffer damages in an amount to be determined at trial, and irreparable harm. Plaintiff is entitled to all available and applicable remedies, including preliminary and permanent injunctive relief, disgorgement of defendants' profits, punitive damages, other damages, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays for relief as follows:

A. For the Court to permanently enjoin defendants, their directors, officers, agents, representatives, parents, subsidiaries, and affiliates, and all persons acting by, through, or in concert with any of them from:

1) using TURQUOISE DIRECT® or Turquoise Traders Direct

2) using any word, term, name, symbol, or device, or combination thereof, that is confusingly similar to, or a colorable imitation of, TURQUOISE DIRECT® or Turquoise Traders Direct;

3) using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any good or services advertised, promoted, or offered by defendants are sponsored, endorsed, connected with, or approved or authorized by plaintiff;

4) causing a likelihood of confusion or injury to plaintiff's business reputation and to the distinctiveness of the TURQUOISE DIRECT® mark by unauthorized use of any confusingly similar mark;

5) engaging in any other activity constituting unfair competition or infringement of the TURQUOISE DIRECT® mark or plaintiff's rights in, or to use, or to exploit the same;

6) assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (1) through (5) above.

B. For the Court to require defendants to pay plaintiff all damages sustained as a result of defendants' conduct;

C. For the Court to require defendants to account for and disgorge to plaintiff all gains, profits, and advantages derived from their conduct;

D. For the Court to require defendants to pay plaintiff's costs and reasonable attorneys' fees;

E. For the Court to find the defendants liable for common law infringement of plaintiff's TURQUOISE DIRECT® trademark, for unfair competition and false designation of origin in violation of federal law, and for damaging plaintiff by their conduct; and

F. That plaintiff be granted such other relief as is just and equitable.

**JURY DEMAND**

Plaintiff demands a jury on all issues triable to a jury in this matter.

Dated: November 24, 2026.

Respectfully submitted,

BARDACKE ALLISON MILLER LLP

By:/s/ *Sundesh Khalsa*
Benjamin Allison
Sundesh Khalsa
141 E Palace Avenue, 2nd Floor
Santa Fe, NM 87505
505-995-8000
ben@bardackeallison.com
sundesh@bardackeallison.com

*Counsel for Plaintiff Chaneys Indian Art, Inc., dba Turquoise Direct*